### SECURITY TRUST CO. v. GLAZIER.

1. CONTRACTS—COMPROMISE AND SETTLEMENT—STIPULATION.
   Construing, in the light of surrounding circumstances and of the interpretation of one of the solicitors for complainant, a stipulation in bankruptcy proceedings whereby the trustee in bankruptcy agreed not to attack certain assignments of insurance made by the bankrupt to his wife, in consideration of the bankrupt's withdrawing opposition to the proceedings, "unless any of said transactions are voidable under the bankruptcy act," such clause is *held* not to have included policies held by said wife by assignments dated prior to the filing of the petition in bankruptcy, claimed by the trustee to have been fraudulently dated back.

2. EQUITY—PLEADING—DEFENSE.
   A defense appearing from complainant's bill and from the proofs offered by him need not be specially pleaded.

Appeal from Washtenaw; Kinne, J. Submitted November 24, 1911. (Docket No. 87.) Decided May 3, 1912.

Bills by the Security Trust Company, trustee of the estate of Frank P. Glazier, bankrupt, against Henrietta M. Glazier and others to set aside certain assignments of

insurance policies as fraudulent.   From a decree for defendants, complainant appeals.   Affirmed.

*Keena, Lightner & Oxtoby* and *Bernard B. Selling*, for appellant.

*Arthur Brown* (*Orla B. Taylor*, of counsel), for appellees.

STEERE, J.   The Security Trust Company of Detroit, as trustee of the estate of Frank P. Glazier, a bankrupt, filed in the circuit court of Washtenaw county two contemporaneous bills of complaint in the above-entitled suits, which, by stipulation, were consolidated and heard together; all proofs taken in one being considered as proofs taken in the other.   The object of the two bills is to set aside, as fraudulent and void, the assignments by Glazier of certain insurance policies to defendants.   The bill against Henrietta M. Glazier and Frank H. Sweetland attacks the assignments of two policies of insurance to said Sweetland —one a 20-year endowment policy issued by the Prudential Life Insurance Company of America for $10,000, issued on the 22d day of October, 1901, and one issued on the same date by the Home Life Insurance Company of New York for $10,000 upon the life of said Glazier.   Both these assignments bear date the 24th day of December, 1906.   The bill against Emily J. Glazier asks for an accounting to inquire into the *bona fides* of various transactions and agreements between the said Glazier and defendant, who is his mother.   These transactions include an agreement by him to pay said defendant $100 per month during the term of her natural life, in return for the transfer to him of all the real and personal estate (except some household effects and interest in the homestead) left her by her husband, who died in 1901.   To secure this he gave his personal note for $40,000; also, another note for $1,000, for $1,000 claimed to have been cash received by her on the death of her husband from life insurance and loaned to him; also, another note for $600 cash loaned him at another time;

also, a note for $4,500 for certain personal property not included in the contract, and which she turned over to him.   She also claims to have loaned him cash at different times aggregating $800 for which she has no written evidence.   These obligations, according to the claim of defendant, total $46,900.   Defendant claims that, as security for this sum, said Frank P. Glazier assigned to her on September 6, 1904, a policy of insurance on his life in the New York Life Insurance Company for $5,000, and a year later, as additional security, assigned and turned over to her seven other insurance policies of various companies aggregating a nominal face value of $61,472. Under this bill the validity of the assignments of four of said policies is in dispute.   In the two cases, therefore, it is sought to defeat the assignment of six separate policies of insurance.   The Prudential Insurance Company policy of $10,000, assigned to defendant Sweetland, carried an annual premium of $531.30 and was payable to the insured, if living, on October 22, 1921, but, in case of his prior death, to his wife, Henrietta M. Glazier, should she survive him, otherwise, to his estate.   The policy for $10,000 in the Home Life Insurance Company, assigned to said Sweetland, carried an annual premium of $525, payable in the same manner.   At the time said Glazier became a bankrupt, the Prudential policy had a cash loan value of $1,850 and a surrender value of $1,950, and the Home Life Insurance Company policy had a loan value of $2,070 and a cash surrender value of $1,740; but to secure a loan on the latter policy the premium for the succeeding insurance year must be paid.   Both these policies provided that the insured, without regard to the beneficiaries, could borrow from the companies on these policies the amounts above stated.   Both policies provided that the insured could, at any time while they were in force, by written notice to the companies, at their home offices, change the beneficiary or beneficiaries, which change would take effect upon the indorsement of the same upon the policy by the company.

The four policies, the assignments of which are attacked in the suit against Emily J. Glazier, are as follows:

(1) A 20-year endowment policy in the New York Life Insurance Company, issued November 24, 1899, for $5,000, carrying an annual premium of $288.70, payable, in case of the death of the insured prior to the expiration of the endowment period, to his wife, Henrietta M. Glazier, should she survive him, otherwise, to his estate. This policy also contained the same provisions for change of beneficiary found in the policies already described, and also the right of the insured to make a loan on the policy without regard to the beneficiary. At the time said Glazier was adjudicated a bankrupt, it had a loan value of $1,800.

(2) A 20-payment life policy in the Mutual Life Insurance Company of New York, dated March 29, 1893, for $5,000, requiring an annual premium of $159 and payable to the estate of said Frank P. Glazier. In November, 1907, said last-named Glazier made request to the company, which stamped upon said policy that it be payable to the defendant Emily J. Glazier if she survive him, otherwise, to his personal representatives, with the proviso that he could again at any time change the beneficiary as he chose.

(3) A policy of $50,000 issued by the Mutual Life Insurance Company of New York, dated September 6, 1901, payable to the estate of the insured. At the time said Glazier was adjudicated a bankrupt, this policy had been in force six years, and six annual premiums of $1,583.50 had been paid. It had a loan value of $5,250 at the time of the filing of the petition in bankruptcy. It also contained a provision for change of beneficiary at any time. While in New York, on November 7, 1907, said Glazier filed request with the company that this policy be made payable to his wife, Henrietta M. Glazier, if living, otherwise, to his estate.

(4) A $5,000 20-payment life policy in the Massachusetts Mutual Life Insurance Company, dated August 16,

1892, carrying an annual premium of $152.10 payable to the estate of said Glazier. Upon this policy 16 annual premiums had been paid. On September 10, 1908, it was made a paid-up policy by payment of $359.93. It contained a provision for cash surrender on its sixteenth year of $1,699, or paid-up insurance of $3,871.10.

It is the claim of complainant that the contested assignments of the six policies are fraudulent and void as against creditors, for the reason that they are antedated, having been made at the same time, on the same typewriter, after said Frank P. Glazier had become insolvent "and probably after January 10, 1908." This was denied, and a direct issue of fact was presented. A large amount of conflicting testimony was introduced. The learned circuit judge decided this issue in favor of defendants and dismissed complainant's bills.

It was and is, also, strenuously contended in behalf of the defense that complainant cannot now question the right of the defendants to the insurance policies involved, in view of a certain stipulation entered into on June 30, 1908, in connection with the bankruptcy proceedings of Frank P. Glazier.

An involuntary petition to have said Glazier declared a bankrupt was filed in the bankruptcy court December 19, 1907. He resisted the petition and filed an answer, by which the matter became tied up, and was delayed until a stipulation was entered into under which opposition was withdrawn. After this, matters progressed more rapidly, and on July 2, 1908, he was duly declared a bankrupt. On November 23, 1908, the referee in bankruptcy made an order confirming this stipulation, and directing the receiver to carry it into effect forthwith; also, citing that—

"Said Security Trust Company, having by its counsel announced in open court that the examination of witnesses regarding the insurance policies referred to in paragraph 2d therein has not yet been completed, and that it cannot as yet make recommendation as to what is the legal status of said policies, it is therefore further ordered that the

testimony upon that matter be closed on or before the 8th day of December, 1908."

This stipulation manifestly resulted from overtures and negotiations, more or less protracted, made and entered into for the purpose of relieving complications which portended litigation and delay. The stipulation stated, by way of inducement, that it was made "in order that as much as possible may be realized to the creditors of said Frank P. Glazier, and that said estate may not be dissipated in litigation." By its terms Frank P. Glazier agreed to withdraw his answer and consent to be adjudicated a bankrupt. It further provided:

"(2) The Security Trust Company, as receiver, agrees to recommend to the creditors, and the parties of the fourth part agree at a creditors' meeting to cast their vote in favor of, the following action:

"(*a*) That the land and property at Cavanaugh Lake, standing in the name of Henrietta M. Glazier, including all improvements, stock, horses, sheep, cattle, vehicles, tools and household furniture; the land and property at Cavanaugh Lake standing in the name of Harold P. Glazier, shall not be subject to any litigation on behalf of the trustee, nor shall said creditors make any claims against said property, but the title as it now stands in the name of Henrietta M. Glazier and Harold P. Glazier shall not be disturbed.

"(*b*) The house and lot in the village of Chelsea, standing in the name of Harold P. Glazier, shall not be disturbed, nor shall any action be brought by the trustee in bankruptcy on behalf of the creditors, to attack said title of Harold P. Glazier.

"(*c*) The cottages in the village of Chelsea, standing in the name of Vera Glazier, also the parcel of land at Cavanaugh Lake, shall not be subject to any litigation on behalf of the trustee in bankruptcy on behalf of creditors; but said title in said Vera Glazier shall be ratified and confirmed.

"(*d*) All life insurance policies on the life of Frank P. Glazier, in which Henrietta M. Glazier is named as beneficiary, and all policies which were assigned or held as security for loans or any other indebtedness of Frank P. Glazier, shall not be claimed by the trustee in bankruptcy

as the property of Frank P. Glazier, unless any of said transactions are voidable under the bankruptcy act."

It was further agreed that, upon there being assigned to said Frank P. Glazier, in lieu of his exemptions, a half interest in the homestead property, and upon there being released to his wife the household furniture in the homestead at the village of Chelsea and the remainder of the title of the trustee in said homestead, and upon the quitclaim to her of one-half of this homestead, and one-half of the vacant property near the Old People's Home, standing in the name of Frank P. Glazier, she would "release by proper deed all her dower interest in all property within the State Michigan or within the State of Ohio, or elsewhere, in which she may have any interest, including all property in the village of Chelsea and elsewhere." This would include all her dower interest in a large amount of real estate; her husband having been an extensive owner of valuable real estate of various kinds, in many places. In order to expedite matters, she also agreed, whenever requested, to execute full quitclaim deeds to all such property, releasing all right of dower. It seems apparent, from the nature of this document, that it was designed to settle all the various matters in conflict between the parties, to end litigation, and secure the good will and co-operation of defendants in the bankruptcy proceedings. The testimony shows that clause "*d*" was subsequently attached as a rider to this instrument, having been originally prepared by Andrew J. Sawyer, attorney for defendants, now deceased.

There is much testimony in regard to what passed between the parties in relation to this matter, and their understanding of its purpose. It is the testimony of the defense that, as originally prepared, it did not contain the provision "unless any of said transactions are voidable under the bankruptcy act," which was subsequently added by counsel for the trustee, under the claim that otherwise the trustee might be precluded from contesting certain in-

surance policies that were assigned to the bank at Stockbridge and other parties.    That there was some misgiving touching the meaning of clause "*d*" is manifest from a letter written July 1, 1908, from Detroit, by Mr. Oxtoby, attorney for the receiver, to Mr. Gorman, then attorney for defendants.    In that letter the writer states that he incloses a duplicate copy of the original agreement with other papers, and that some question has been raised by the creditors as to the meaning of said paragraph "*d*," which is quoted.    The writer then states:

"I assured the creditors that the understanding of this clause was that it affected only life insurance policies held by Henrietta M. Glazier, Emily J. Glazier, Vera Glazier and Harold P. Glazier, being the parties named in the agreement, and had no reference to any policies held by the Chelsea Savings Bank, if any, or by the Stockbridge Bank, and that they only affected policies held by members of the Glazier family.

"Kindly write me a letter, stating that this understanding of mine is also your understanding.    The instrument was signed on this express representation by me, and I do not wish to call the creditors together again for the purpose of having them modify the agreement signed, and I know there is no necessity of doing this, because of our express understanding."

In reply to this, on September 17, 1908, Mr. Gorman said:

"In regard to the understanding we had with reference to life insurance mentioned in settlement of dower rights of Mrs. Glazier in her husband's estate, will say that your understanding of the agreement in said letter is as I understood it."

It subsequently developed that this apparently distinct understanding of the import of said clause was distinctly a misunderstanding.    Gorman told Mrs. Glazier of the letter and assured her there was no trouble about it, that the added sentence only referred to papers and policies assigned to the Stockbridge Bank, in which the family had no beneficial interest, and not to these policies as-

signed to members of the family, which they thereafter assumed to be free from question and treated as their own.

Co-operating with the trustee in bankruptcy, Frank P. Glazier, on July 29, 1908, furnished a complete list of policies of insurance on his life. It was found policies aggregating $100,000 had been assigned to the Stockbridge Bank within four months prior to filing the petition in bankruptcy. These the trustee, through its counsel, pursued as voidable under the bankruptcy act, and an adjustment was reached without litigation. Following this, and a year after the stipulation was signed, on August 2, 1909, this suit was begun; it being claimed that the concluding sentence in clause "d" left the validity of these assignments open to litigation. Apparently the question raised by the creditors, and made the subject of correspondence between counsel, was the effect of the clause in proceedings against other parties in similar matters; such is the inference from the letter of complainant's counsel.

The clause should be construed in the light of the stipulation, taken as a whole, and the facts and circumstances surrounding its making.

The Glazier estate was a large one, and the failure heavy and disastrous, affecting many interests, public and private. Much property, of various kinds and values, scattered in many places, was involved. It was of serious importance for the trustee to speedily ascertain and obtain control of these assets. The consent and assistance of Glazier, who was opposing it, was essential to that end. The equities in these insurance·policies and the other property conceded to the Glaziers were small matters in comparison. Whether rightfully or wrongfully, they were opposing the proceedings and making claims to various properties.

Negotiations were entered into, and a stipulation made, the manifest and declared object of which was to adjust and settle and keep out of litigation certain doubtful mat-

ters.    To leave anything covered by the stipulation doubtful, unsettled, and open to litigation was not in harmony with its purpose.    Under the construction of clause "*d*" contended for by complainant, it settled nothing and portended further litigation—was simply a meaningless promise not to question the policies if the trustee finally decided they were valid and could not be questioned.

Construing the stipulation as an entirety, in the light of the whole history of this case, as revealed by the testimony, we think it was understood and intended by all parties as a cleaning up and final settlement of all matters in difference nominated in the writing; that the questionable conclusion of clause "*d*" had no further meaning than to make clear that no other similar matters should be affected by it, and, having received the benefits of said stipulation, complainant cannot now open those subjects and litigate them.

It is claimed this should have been pleaded as an affirmative defense.    The stipulation was part of the proceedings before the referee in bankruptcy, which are made part of the bills of complaint.    It was incumbent on complainant to show that it had a right to bring these suits, and that it was not precluded by any matter set up in its bills.    The answers put complainant to its proofs, and the issue was before the court.

The decree of the circuit court is affirmed, with costs.

McAlvay, Brooke, Blair, and Ostrander, JJ., concurred.